[No. 18987-9-II. Division Two. October 4, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERTO MAGANAI, *Appellant*.

*Pattie Mhoon*, for appellant.

*John W. Ladenburg, Prosecuting Attorney*, and *Barbara L. Corey-Boulet, Deputy*, for respondent.

SEINFELD, C.J. — A jury found Roberto Maganai guilty of attempted first degree rape. The evidence showed that Maganai had pulled his victim from her car and thrown her to the ground, but abandoned the attack after the victim began screaming for help. As the felonious entry of a vehicle is an essential element of first degree rape and as it is a misdemeanor, not a felony, to wrongfully enter a car, we conclude that the evidence was insufficient to convict Maganai of attempted rape in the first degree. Thus, we reverse the conviction and remand for resentencing for second degree attempted rape.

## FACTS

Late one evening, DT lost her way after taking a co-worker home from work. Finding herself on a dark road

near the Puyallup River, she stopped her Jeep Cherokee and called her boyfriend, WG, on her cellular phone.

During this call, a white sedan occupied by two Hispanic males pulled up next to her. DT interrupted her conversation with WG and asked the two men for directions. The men conferred with one another in Spanish; neither responded to DT's repeated inquiries.

Scared, DT continued her connection with WG, but told the men that she had called 9-1-1 and that she no longer needed their help because the police were assisting her. The men pulled away.

DT then began turning her Jeep around. As she turned, she saw the sedan backing up toward her rapidly. Panicked, DT drove the Jeep into a ditch, but nonetheless was able to read the sedan's license plate number over the phone to WG.

The sedan stopped and the passenger jumped out, opened the door of the Jeep, and pulled DT onto the roadside. DT screamed and yelled for help. She struggled with her assailant and broke away. He caught her, threw her to the ground, pulling and ripping her dress and nylons.

On the other side of the river, patrons at a cinema heard DT's cries and began yelling out to her. At this, DT's assailant abandoned his attack and jumped into the sedan, which then sped away.

Meanwhile, WG hung up and dialed 9-1-1. The Puyallup Police Department also received reports of a woman crying for help from behind a cinema building in Puyallup. Within moments several police officers were at DT's side.

DT told the officers that her assailants were two Hispanic males who were traveling in a white sedan. She also told them part of the sedan's license plate number. The police radio dispatcher then provided the officers with the complete license number that WG had given to 9-1-1. Two officers began searching the surrounding area for the suspects.

About 10 minutes later, the officers discovered a white Ford Fairlane sedan with a license number that matched the number WG had provided in a bingo hall parking lot. Security guards advised the police that the sedan's occupants, two Hispanic males, had gone inside.

The security guards then brought the sedan's occupants, Roberto Maganai and Rafael Cuiriz, to the parking lot where law enforcement personnel handcuffed them. Another officer brought DT to the bingo hall parking lot for a "show-up" identification.

At the parking lot, police cruiser headlights and spotlights illuminated the handcuffed suspects. Upon seeing the suspects, DT immediately volunteered that they were the ones who had attacked her. She identified Maganai, who was thinner and younger than Cuiriz, and who wore dark pants, as the one who had committed the actual assault.

Three days later, the State charged Maganai and Cuiriz with attempted first degree rape. In an affidavit of probable cause, the State identified Maganai as the driver of the sedan. But Cuiriz testified at Maganai's trial that he, not Maganai, was the driver.

Before trial, Maganai moved to have the "show-up" identification suppressed as unduly suggestive and unreliable. He also asked the trial court to order a lineup. The trial court denied both motions. A jury convicted Maganai as charged.

I

THE FELONIOUS ENTRY OF A VEHICLE

Maganai contends that his actions did not constitute the offense of first degree rape because he did not *feloniously* enter DT's automobile. The State asks us to interpret "felonious entry" as including any criminal entry, whether a felony or misdemeanor offense.

RCW 9A.44.040(1)(d) provides: "(1) A person is guilty of

rape in the first degree when such person engages in sexual intercourse with another person by forcible compulsion where the perpetrator or an accessory: . . . (d) *Feloniously* enters into the building or vehicle where the victim is situated." (Emphasis added.) Two statutes penalize the wrongful entry into a vehicle: RCW 9A.52.095, vehicle prowling in the first degree (entry into a motor home);[1] and RCW 9A.52.100, vehicle prowling in the second degree (entry into a motor vehicle other than a motor home).[2] Vehicle prowling in the first degree is punishable as a statutory felony. *See* RCW 9A.52.095(2). Second degree vehicle prowling is punishable as a gross misdemeanor. RCW 9A.52.100(2).

According to the dictionary, the term "felonious," as used in RCW 9A.44.040(1)(d), is ambiguous. It can have both the specific meaning offered by Maganai, (1) "of, relating to, or having the quality of a felony," or (2) the more general meaning, "being against the law," forwarded by the State. WEBSTER'S THIRD NEW INT'L DICTIONARY 836 (1966).

We applied the narrower interpretation in *State v. Thomson*, 71 Wn. App. 634, 637, 861 P.2d 492 (1993). There we said that a "felonious entry" is an entry that is "burglarious" as opposed to "lawful or trespassory." *Thomson*, 71 Wn. App. at 637. The *Thomson* case involved a charge of first degree rape. The victim invited Thomson

---

[1]RCW 9A.52.095 provides in pertinent part:

"(1) A person is guilty of vehicle prowling in the first degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a motor home, as defined in RCW 46.04.305, or in a vessel equipped for propulsion by mechanical means or by sail which has a cabin equipped with permanently installed sleeping quarters or cooking facilities."

[2]RCW 9A.52.100 provides in pertinent part:

"(1) A person is guilty of vehicle prowling in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a vehicle other than a motor home, as defined in RCW 46.04.305, or a vessel equipped for propulsion by mechanical means or by sail which has a cabin equipped with permanently installed sleeping quarters or cooking facilities."

to spend the night in her home, but she did not invite him into her bedroom. Later that evening, Thomson forcibly entered the victim's bedroom and forced her to have sex with him. On appeal, Thomson argued that his entry into the bedroom was not felonious and, therefore, could not support his first degree rape conviction.

Looking to legislative intent behind the burglary statute and the definition of the term "building," this court found that the unauthorized entry into a room in a single occupancy residence was not a burglary under Washington law and, therefore, could not serve as the predicate offense for a first degree rape conviction. Moreover, we noted that, even without the legislative history, application of the rule of lenity would require the ambiguity in the statute to be resolved in favor of the defendant. *Thomson*, 71 Wn. App. at 645-46.

In the present case, Maganai entered DT's Jeep, a motor vehicle, during the attempted rape. Although the Legislature has defined the burglarious entry into a motor *home* as a felony, it chose to define a second degree car prowl as only a misdemeanor. Therefore, Maganai did not commit a felony when he broke into DT's car.

█ █ Nor do we find any legislative history that indicates a contrary legislative intent. See *Bellevue Fire Fighters Local 1604 v. City of Bellevue*, 100 Wn.2d 748, 751, 675 P.2d 592 (1984) (where statute ambiguous, court may look to legislative history for insight into legislative intent), *cert. denied*, 471 U.S. 1015 (1985). Thus, confronted with conflicting meanings for which the legislative history provides no direction, the rule of lenity applies. This rule requires us to construe an ambiguous criminal statute in favor of the criminal defendant. *State v. Roberts*, 117 Wn.2d 576, 586, 817 P.2d 855 (1991).

Accordingly, we must vacate Maganai's conviction for first degree attempted rape and remand the matter to the trial court for resentencing for second degree attempted rape.

A majority of the panel having determined that only

the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

TURNER and ARMSTRONG, JJ., concur.