[No. 52817-3-I. Division One. June 20, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. STEVEN JEFFREY SPENCER, *Appellant*.

*Catherine L. Floit*; and *Dana M. Nelson* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Erin H. Becker, Deputy*, for respondent.

¶1 BAKER, J. — In violation of a no-contact order, Steven Spencer went to Shelia Quinn's apartment, entered, and remained for several minutes despite requests by Quinn and her son, Aaron Skinner, for Spencer to leave. Spencer was found guilty of residential burglary and violation of a court order. Spencer claims that substantial evidence does not support his conviction for residential burglary, he was denied a unanimous verdict, and his Sixth Amendment rights were violated when the judge, and not the jury, determined that the offenses were domestic violence crimes. Because substantial evidence supports a finding of guilt under both alternate means of committing residential burglary, his first two grounds for appeal fail. And because his punishment was not increased when the judge made a finding of domestic violence, Spencer's Sixth Amendment rights were not violated. We affirm.

I

¶2 Steven Spencer had lived with Sheila Quinn, but by July 31, 2002, he was prohibited by court order pursuant to RCW 10.99.050 from having contact with her or coming within 1,000 feet of her residence or workplace. Despite the no-contact order, Spencer went to Quinn's apartment and entered. Quinn's son, Aaron Skinner, and Quinn both asked Spencer to leave. He did not leave voluntarily, but was eventually pushed out by Skinner and a friend.

¶3 Spencer was arrested and charged with one count of residential burglary—domestic violence in violation of RCW 9A.52.025, and one count of misdemeanor violation of a no-contact order—domestic violence in violation of RCW 26.50.110(1).

¶4 The jury was not asked to decide whether the offenses were crimes of domestic violence, i.e., committed by one family or household member against another. There is no evidence on the record that the prosecuting attorney elected one of the alternate means—unlawful entry or unlawful remaining—of committing burglary. The jury found Spencer guilty as charged, but did not specify upon which alternate means of committing burglary it relied to find Spencer guilty.

¶5 During sentencing, the judge checked a box on the judgment and sentence indicating that the offenses were crimes of domestic violence. As a result of that finding, the judge issued a no-contact order under RCW 10.99.050. Finally, the judge imposed a standard range sentence on Spencer for the residential burglary—domestic violence conviction.

## II

¶6 Spencer argues that the State failed to prove an essential element of residential burglary. Spencer was charged with residential burglary—domestic violence under RCW 9A.52.025(1), which provides:

> A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle.[1]

¶7 Spencer argues that he did not have the intent to commit a crime upon entering the apartment. He concedes that he violated the no-contact order by entering within 1,000 feet of Quinn's residence. But he argues that he committed a single crime by entering the prohibited zone; not separate crimes for entering the zone, entering the apartment, and remaining in the apartment. The crime that the State asserts that he intended to commit upon entering the apartment is violation of a no-contact order.

---

[1] RCW 9A.52.025(1).

Spencer argues that because his violation of the no-contact order was complete once he entered the prohibited zone, he could not have the requisite intent to commit a crime upon entering the residence. Thus, the linchpin of Spencer's argument is his assertion that violation of a no-contact order is not a continuing crime.

 ¶8 To determine whether a defendant's acts are a continuing course of criminal conduct, "the facts must be evaluated in a commonsense manner."[2] But the court should also remember that "the doctrine of continuing offenses should be employed sparingly, and only when the legislature expressly states the offense is a continuing offense, or when the nature of the offense leads to a reasonable conclusion that the legislature so intended."[3]

¶9 Spencer argues that similar to the defendant's failure to transfer the title of a car in *State v. Green*,[4] his violation of a no-contact order was not a continuing offense. The court in *Green* determined that the relevant statute contained no express language that indicated failure to transfer a title within 45 days was a continuing offense.[5] Similarly, there is no express language in RCW 26.50.110 stating that the legislature intended violation of a no-contact order to be a continuing crime.

 ¶10 Despite the absence of express language in the statute, the nature of a violation of a no-contact order leads to a reasonable conclusion that the legislature intended that the offense be a continuing crime. The core purpose of the law is to protect an individual from domestic abuse. Although a zone of safety is created around an individual, it is the person that is being protected, not the zone. Once a defendant enters the prohibited zone, the crime begins but is not complete—it continues. As long as the defendant

---

[2] *State v. Petrich*, 101 Wn.2d 566, 571, 683 P.2d 173 (1984).

[3] *State v. Green*, 150 Wn.2d 740, 742-43, 82 P.3d 239 (2004).

[4] 150 Wn.2d 740, 82 P.3d 239 (2004).

[5] *Green*, 150 Wn.2d at 744.

remains within the prohibited zone, he continues to violate the no-contact order.

¶11 Further proof that a violation of a no-contact order is a continuing crime lies in the fact that a defendant may violate the no-contact order in a number of ways.[6] In *State v. Stinton*,[7] the court explained that a "court may specifically tailor a protection order to the petitioner's circumstances by including multiple provisions forbidding the respondent from a variety of misconduct toward the petitioner."[8] Thus, a defendant "may violate a protection order by disobeying one or several of multiple provisions."[9] For example, in *Stinton*, the court concluded the defendant's harassing and threatening conduct was separate and distinct from his unlawful entry.[10] Based on these separate violations of the no-contact order, the court held that "a violation of a protection order provision can serve as a predicate crime for residential burglary."[11] The court in *Stinton* did not directly discuss the issue of whether violation of a no-contact order is a continuing crime. But the court implied that the crime was continuing when it ruled that the defendant could violate the provision to not harass the protected person after the defendant had already violated the provision not to enter the protected person's residence.

¶12 In addition to the holding in *Stinton*, the punishment scheme devised by the legislature leads us to conclude that it intended a violation of a no-contact order to be a continuing crime. The no-contact order that Spencer was charged with violating was issued under RCW 10.99.050. The purpose of that statute is to assure victims of domestic

---

[6] *State v. Stinton*, 121 Wn. App. 569, 575, 89 P.3d 717 (2004).

[7] 121 Wn. App. 569, 89 P.3d 717 (2004).

[8] *Stinton*, 121 Wn. App. at 575.

[9] *Stinton*, 121 Wn. App. at 575.

[10] *Stinton*, 121 Wn. App. at 575.

[11] *Stinton*, 121 Wn. App. at 576.

violence maximum protection from abuse.[12] To accomplish the goal of maximum protection, the legislature implemented a scheme whereby "assaultive violations of no-contact orders [are punished] more severely than nonassaultive violations (former RCW 10.99.040(4)(b) and 10.99.050(2) [1997])."[13] Likewise, the legislature included section (4) in RCW 26.50.110— under which Spencer was charged—which elevates an assault that might otherwise be a misdemeanor to a class C felony if that assault is a violation of a no-contact order.[14]

¶13 We must interpret and construe statutes "so that all the language used is given effect, with no portion rendered meaningless or superfluous."[15] If the crime of violating a no-contact order were complete once a defendant entered the prohibited zone around the protected person, then the crime of violation of a no-contact order would always be complete before an assault occurred. The punishment schemes mentioned above would never be triggered, and the language in the statutes would be rendered meaningless and superfluous. To give effect to the legislature's punishment scheme, we conclude that violation of a no-contact order is a continuing offense. And because a violation of a no-contact order is a continuing offense, Spencer's challenge to the sufficiency of the evidence fails.

¶14 Spencer argues that the legislature did not intend a defendant who violates a no-contact order in a dwelling to automatically face a felony punishment, therefore we should not allow a violation of a no-contact order to serve as the "intent to commit" a crime element of burglary. Spencer claims that the legislature expressed its intent clearly when it provided that an assaultive violation of a no-contact order should be elevated to a class C felony. Spencer claims that the legislature could have included another provision stat-

---

[12] *State v. Ward*, 148 Wn.2d 803, 813, 64 P.3d 640 (2003) (citing RCW 10.99.010).

[13] *Ward*, 148 Wn.2d at 813.

[14] RCW 26.50.110(4).

[15] *City of Seattle v. State*, 136 Wn.2d 693, 698, 965 P.2d 619 (1998).

ing that a violation of a no-contact order within a dwelling should be elevated to a felony as well. But the legislature chose to not include such a provision. Spencer argues that we should not allow a violation of a no-contact order to serve as the "intent to commit a crime" element of burglary because that would result in always punishing a violation of a no-contact order within a dwelling as a felony, contrary to the legislature's intent.

¶15 Spencer misinterprets the legislature's actions. First, the legislature did not merely add a provision making all assaultive violations of a no-contact order a felony. Instead, the legislature relied on already existing statutes to ensure that any assault in violation a no-contact order was punished as a felony. It elevated any assault that violated a no-contact order *and did not amount to assault in the first or second degree* from a misdemeanor to a class C felony.[16] The legislature did not need to add legislation related to a first or second degree assault that violated a no-contact order because assault in the first and second degree already were felonies.[17]

¶16 Likewise, the legislature did not have to add language related to a violation of a no-contact order that occurred in a dwelling. The burglary statutes already guaranteed that any violation of a no-contact order within a dwelling could be punished as a felony under the burglary statutes.[18]

■ ¶17 We acknowledge that our holding allows prosecuting attorneys to charge defendants aggressively. But the potential for a defendant to face tough charges is consistent with the legislature's intent when it created the burglary antimerger statute. RCW 9A.52.050 provides that "[e]very person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime

---

[16] RCW 26.50.110(4).

[17] RCW 9A.36.011, .021.

[18] RCW 9A.52.020, .025, .030.

separately."[19] Spencer may be prosecuted separately and punished for both a violation of the no-contact order and burglary. Nothing in the burglary or domestic violence prevention statutes indicates an intention by the legislature not to allow these two crimes to be charged separately.

¶18 Next, Spencer argues that because "enters unlawfully" and "remains unlawfully" are alternate means of committing burglary that are repugnant to each other, he was denied his right to a unanimous jury verdict. It is well-established law in Washington that "[j]ury verdicts in criminal cases must be unanimous as to the defendant's guilt of the crime charged."[20] The right to jury unanimity may include "the right to express unanimity as to the means by which the defendant committed the crime."[21]

¶19 If sufficient evidence supports each alternate means, "a particularized expression of unanimity as to the means by which the defendant committed the crime is unnecessary."[22] But for a jury verdict of guilt to stand when "the evidence is insufficient to present a jury question as to whether the defendant committed the crime by any one of the means submitted to the jury, . . . the prosecutor [must have] elected or the court [must have] instructed the jury which means to rely on in its deliberations."[23] And "[j]ury unanimity requirements may also be met if each of the means is supported by substantial evidence in the record and the means are not repugnant to one another."[24]

¶20 Spencer argues that he could not have "remained unlawfully" under *State v. Klimes*,[25] where we stated that

---

[19] RCW 9A.52.050.

[20] *State v. Klimes*, 117 Wn. App. 758, 770, 73 P.3d 416 (2003) (citing *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994)).

[21] *Klimes*, 117 Wn. App. at 770.

[22] *Klimes*, 117 Wn. App. at 770.

[23] *Klimes*, 117 Wn. App. at 770 (citing *Ortega-Martinez*, 124 Wn.2d at 707-08).

[24] *Klimes*, 117 Wn. App. at 770 (citing *State v. Whitney*, 108 Wn.2d 506, 508, 739 P.2d 1150 (1987)).

[25] 117 Wn. App. 758, 73 P.3d 416 (2003).

"enters unlawfully" and "remains unlawfully" are repugnant alternate means of committing burglary. He concedes that substantial evidence supports the "enters unlawfully" means, but argues that the evidence does not support the "remains unlawfully" means. In fact, he argues that because the two means are repugnant, he could not have committed both. And because the prosecutor did not elect one of the means, and the jury verdict did not specify the means upon which the conviction rested, his conviction must be reversed.

¶21 But in *State v. Allen*,[26] we retreated from our previous statement in *Klimes* that "enters unlawfully" and "remains unlawfully" are repugnant to each other.[27] Alternate means of committing a crime are repugnant to each other only if proof of one will disprove the other.[28] In *Klimes*, we relied on two cases, *State v. Collins*[29] and *State v. Thomson*[30] to define "remains unlawfully."[31] The holdings in *Collins* and *Thomson* illustrated that "the unlawful remaining concept is intended primarily for situations in which the initial entry to a building is lawful, but the defendant either exceeds the scope of the license or privilege to enter, or the license is impliedly or expressly terminated."[32]

¶22 But as we explained in *Allen*, "neither *Collins* nor *Thomson* suggests that unlawful remaining, for purposes of burglary, occurs *only* when the initial entry is lawful."[33] We further explained that the common situation where a defendant breaks into a building and continues to

---

[26] 127 Wn. App. 125, 110 P.3d 849 (2005).

[27] *Allen*, 127 Wn. App. at 132.

[28] *Allen*, 127 Wn. App. at 132 (citing *State v. Arndt*, 87 Wn.2d 374, 383, 553 P.2d 1328 (1976)).

[29] 110 Wn.2d 253, 751 P.2d 837 (1988).

[30] 71 Wn. App. 634, 861 P.2d 492 (1993).

[31] *Klimes*, 117 Wn. App. at 765-67.

[32] *Allen*, 127 Wn. App. at 133.

[33] *Allen*, 127 Wn. App. at 133.

remain in the building without permission is an example of entering unlawfully *and* remaining unlawfully.[34] We concluded that "[r]egardless of whether the defendant possessed an intent to commit a crime at the time of the unlawful entry, if the defendant unlawfully remains with the intent to commit a crime, we see no reason such conduct does not satisfy the requirements for burglary."[35]

¶23 Because Spencer relies on too narrow a definition of "remained unlawfully," his argument that substantial evidence could not support both means of "enters unlawfully" and "remains unlawfully" fails. Instead, we conclude that substantial evidence does support both means. Therefore, a particularized expression of unanimity as to the means by which Spencer committed the crime was unnecessary. He was not denied his right to a unanimous jury verdict.

¶24 Next, in supplemental briefing, Spencer argues that under *Blakely v. Washington*,[36] his Sixth Amendment rights were violated because the judge, and not the jury, made factual findings necessary to designate the offense as one of "domestic violence." The United State Supreme Court in *Blakely* reiterated the rule from *Apprendi v. New Jersey*[37] that " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' "[38] In *Blakely*, the Court clarified that the statutory maximum for *Apprendi* purposes is "the maximum [a judge] may impose *without* any additional findings."[39] Thus, the judge exceeds his

---

[34] *Allen*, 127 Wn. App. at 133.

[35] *Allen*, 127 Wn. App. at 133.

[36] 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[37] 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

[38] *Blakely*, 542 U.S. at 301 (quoting *Apprendi*, 530 U.S. at 490).

[39] *Blakely*, 542 U.S. at 304.

proper authority when he inflicts punishment that the jury's verdict alone does not allow.[40]

¶25 In *State v. Felix*,[41] we held that a judge does not increase a defendant's punishment by making a finding of domestic violence and therefore does not violate the defendant's Sixth Amendment rights.[42]

¶26 Spencer raises one issue not discussed in *Felix*. He claims that the judge's finding increases punishment by reducing earned early-release time. But Spencer would not have qualified for the greater earned early-release time even without the finding of domestic violence. Under RCW 9.94A.728(1)(b)(ii)(B), a defendant is qualified to earn up to 50 percent aggregate earned release time if he was "not confined pursuant to a sentence for: (I) A sex offense; (II) A violent offense; (III) A crime against persons as defined in RCW 9.94A.411; (IV) A felony that is domestic violence as defined in RCW 10.99.020; (V) A violation of RCW 9A-.52.025 (residential burglary); . . . ."[43] Spencer was convicted of a crime against persons when he was convicted of violation of domestic violence court order.[44] He also was convicted of residential burglary, one of the crimes listed in RCW 9.94A.728(1)(b)(ii)(B).

¶27 Moreover, even if Spencer had been qualified for the higher rate of early-release time, *Apprendi* and *Blakely* do not address early-release time, because it is not

---

[40] *Blakely*, 542 U.S. at 304.

[41] 125 Wn. App. 575, 105 P.3d 427 (2005).

[42] *Felix*, 125 Wn. App. at 576-77.

[43] RCW 9.94A.728(1)(b)(ii)(B).

[44] RCW 9.94A.411(2)(a).

an increase beyond the maximum penalty of the standard range.[45]

¶28 Affirmed.

ELLINGTON, A.C.J., and APPELWICK, J., concur.

---

[45] *Blakely*, 542 U.S. at 304-05; *Harris v. United States*, 536 U.S. 545, 565, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002); *People v. Garcia*, 121 Cal. App. 4th 271, 16 Cal. Rptr. 3d 833, 837 (2004).