**FILED**
**FEBRUARY 6, 2018**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34762-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| JAMES DAVID DUNLEAVY, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — James David Dunleavy appeals his convictions for second degree burglary and third degree theft. The convictions stem from Dunleavy, then an inmate at the Walla Walla County jail, going into another inmate's jail cell and taking his food. The central issue raised by Dunleavy is whether a jail cell is a separate building for purposes of RCW 9A.04.110(5). We hold that it is. We affirm Dunleavy's convictions, but remand for resentencing so the State can prove Dunleavy's offender score.

FACTS

Dunleavy was an inmate at the Walla Walla County jail in Unit E. In Unit E, there are eight cells capable of housing two inmates per cell. The cells open into a day room.

In Unit E, the cell doors are open from about 6:00 a.m. until 9:00 p.m. An inmate is permitted to close his cell door, but if he does, the door will remain locked until opened the next morning.

Dunleavy was hungry one day, so he asked inmate Kemp LaMunyon for a tortilla. LaMunyon responded that he did not have enough to share, but would buy more later and share with Dunleavy at that time. Dunleavy later bullied LaMunyon and threatened to "smash [him] out." Report of Proceedings (RP) at 5. Soon after, inmate John Owen attacked LaMunyon. During the attack, Dunleavy snuck into LaMunyon's jail cell and took some of LaMunyon's food.

LaMunyon was seriously injured by Owen. Jail security investigated the fight and the theft, and concluded that the two were related. Security believed that Dunleavy staged the fight between Owen and LaMunyon to give him an opportunity to take LaMunyon's food. Because of the seriousness of LaMunyon's injuries, and because security concluded that the fight and the theft were related, the jail referred charges to the local prosecuting authority. The State charged Dunleavy with second degree burglary, third degree theft, and second degree assault.

The State presented evidence of the jail's policies through Sergeant Anthony Robertson. Sergeant Robertson testified that new inmates are informed of the jail's

policies when they are booked into jail. Inmates are informed, "first and foremost, they are not supposed to go into each other's cell." RP at 20. Sergeant Robertson explained that cells are assigned to inmates, and each inmate can expect privacy in their assigned space. Sergeant Robertson explained that inmates sometimes enter other inmates' cells without permission and if a separate crime occurs during the trespass, he will refer the matter for prosecution as a burglary.

After the State presented its case, Dunleavy moved to dismiss the second degree burglary charge on the basis that an inmate's cell is a separate building for purposes of RCW 9A.04.110(5). The trial court considered the parties' arguments, denied Dunleavy's motion to dismiss, and the case continued forward.

Dunleavy called one witness who testified that Dunleavy did not conspire with Owen to assault LaMunyon. After closing arguments, the case was submitted to the jury.

The jury began deliberating at 1:30 p.m. At 4:00 p.m., the jury sent a written note to the trial court through the bailiff. The note asked, "Are the Walla Walla county jail policies legally binding? Are they considered law? What if we are not unanimous on a certain count?" Clerk's Papers (CP) at 5. The trial court, counsel, and Dunleavy discussed how the trial court should respond. The trial court's response read, "You are to review the evidence, the exhibits, and the instructions, and continue to deliberate in order

3

to reach a verdict." CP at 5. No party objected to this response. Less than one hour later,

the jury returned a verdict finding Mr. Dunleavy guilty of second degree burglary and

third degree theft but not guilty of second degree assault.

At sentencing, Dunleavy wrote a letter to the court that his counsel read into the

record. Through this letter, Dunleavy asked for a sentencing alternative rather than the

State's sentencing recommendation of three to five years' confinement. The State

represented that Dunleavy had an offender score of 9+. The State did not offer any

evidence of Dunleavy's prior convictions. Defense counsel did not contest the State's

representation of Dunleavy's offender score. The trial court sentenced Dunleavy based

on the State's representation that Dunleavy had an offender score of 9+.

Dunleavy timely appealed.

## ANALYSIS

TRIAL COURT'S RESPONSE TO JURY QUESTIONS NOT MANIFEST ERROR

Dunleavy first argues the trial court violated his constitutional right to a jury trial

by improperly coercing the jury to reach a verdict.

Dunleavy did not preserve this claim of error by objecting below to the trial court's

response to the jury's questions. Nevertheless, RAP 2.5(a)(3) permits an appellate court

to review an unpreserved claim of error if it involves a "manifest error affecting a

4

constitutional right." Our RAP 2.5(a)(3) analysis involves a two-prong inquiry. First, the alleged error must truly be of constitutional magnitude. *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). Second, the asserted error must be manifest. *Id.*

### 1. Constitutional magnitude

Dunleavy meets the first part of the RAP 2.5(a)(3) test. The state and federal constitutions protect an accused person's right to a jury trial. U.S. CONST. amends. VI, XIV; WASH. CONST. art. I, §§ 21, 22. Among other protections, these provisions secure "the right to have each juror reach his verdict uninfluenced by factors outside the evidence, the court's proper instructions, and the arguments of counsel." *State v. Boogaard*, 90 Wn.2d 733, 736, 585 P.2d 789 (1978). This right prohibits a judge from coercing a criminal jury to reach a verdict. *Id.* at 736-37. Dunleavy's claim that the trial court improperly coerced the jury to reach a verdict therefore is truly of constitutional magnitude. *See also State v. Ford*, 171 Wn.2d 185, 188, 250 P.3d 97 (2011).

### 2. Manifest error

Dunleavy fails to meet the second part of the RAP 2.5(a)(3) test. We construe "manifest" in a manner that strikes a careful policy balance between requiring objections to be raised so trial courts can correct errors and permitting review of errors that actually resulted in serious injustices to the accused. *Kalebaugh*, 183 Wn.2d at 583.

5

"[M]anifestness 'requires a showing of actual prejudice.'" *Id.* at 584 (internal quotation marks omitted) (quoting *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)). "'To demonstrate actual prejudice, there must be a plausible showing . . . that the asserted error had practical and identifiable consequences in the trial of the case.'" *Id.* (internal quotation marks omitted) (quoting *O'Hara*, 167 Wn.2d at 99). In addition, such consequences "'should have been reasonably obvious to the trial court,' and the facts necessary to adjudicate the claimed error must be in the record." *Id*. at 588 (quoting *O'Hara*, 167 Wn.2d at 108, 99). By limiting our review of unpreserved constitutional errors to errors that are obvious, adjudicable from the record, and resulted in actual prejudice, we strike the proper policy balance.

Here, after only two and one-half hours of deliberating, the jury asked whether the Walla Walla County jail policies are legally binding, whether they are considered law, and what if they could not reach a unanimous verdict on one count. The trial court, after seeking input from the State and Dunleavy, responded in writing, "You are to review the evidence, the exhibits, and the instructions, and continue to deliberate in order to reach a verdict." CP at 5. This response is not so obviously coercive as to constitute manifest error. Because the unpreserved claim of error was not obvious, it is not reviewable under RAP 2.5(a)(3).

SUFFICIENCY OF THE EVIDENCE

Dunleavy next challenges the sufficiency of the evidence to sustain his conviction for second degree burglary. He argues a jail cell is not a separate building and, even if it is, he had an implied license to enter LaMunyon's cell. We disagree with both arguments.

*Standard of review*

In a criminal case, the State must provide sufficient evidence to prove each element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In evaluating the sufficiency of the evidence, the court must determine whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Pirtle*, 127 Wn.2d 628, 643, 904 P.2d 245 (1995). A claim of insufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences from that evidence. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). Reviewing courts also must defer to the trier of fact "on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). This court does not reweigh the evidence and substitute its judgment for that of the jury. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d

628 (1980). For sufficiency of evidence claims, circumstantial and direct evidence carry equal weight. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004).

*Rules of statutory interpretation*

Dunleavy's argument also requires interpretation of a definitional statute related to burglary. Statutory interpretation is a question of law reviewed de novo. *State v. Evans*, 177 Wn.2d 186, 191, 298 P.3d 724 (2013). "The purpose of statutory interpretation is 'to determine and give effect to the intent of the legislature.'" *Id.* at 192 (quoting *State v. Sweany*, 174 Wn.2d 909, 914, 281 P.3d 305 (2012)). "When possible, we derive legislative intent solely from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole." *Id.* "Plain language that is not ambiguous does not require construction." *Id.* "If more than one interpretation of the plain language is reasonable, the statute is ambiguous and we must then engage in statutory construction." *Id.* at 192-93. "We may then look to legislative history for assistance in discerning legislative intent." *Id.* at 193. "If a penal statute is ambiguous and thus subject to statutory construction, it will be 'strictly construed' in favor of the defendant." *Id.* (quoting *State v. Hornaday*, 105 Wn.2d 120, 127, 713 P.2d 71 (1986)). "This means that we will interpret an ambiguous penal statute adversely to the defendant

only if statutory construction 'clearly establishes' that the legislature intended such an interpretation." *Evans*, 177 Wn.2d at 193 (quoting *City of Seattle v. Winebrenner*, 167 Wn.2d 451, 462, 219 P.3d 686 (2009)).

*1.      Jail cells are separate buildings for purposes of proving burglary*

"A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building other than a vehicle or a dwelling." RCW 9A.52.030(1). RCW 9A.04.110(5) defines "building" in relevant part as

> any . . . structure used for lodging of persons . . . ; *each unit of a building consisting of two or more units separately secured or occupied is a separate building*.

(Emphasis added.)

Dunleavy does not dispute that a jail is a building used for lodging of persons, specifically inmates. The evidence at trial established that each cell is secured at night and an inmate can secure his cell from others. The evidence at trial further established that each cell is separately occupied by two inmates. We discern no ambiguity. A jail cell is a separate building for purposes of proving burglary.

Dunleavy cites *State v. Thomson*, 71 Wn. App. 634, 861 P.2d 492 (1993) in support of his argument that a jail cell is not a "unit of a building . . . separately secured

or occupied." In *Thomson*, the victim rented a house and invited the defendant to stay in

a guest bedroom. *Id*. at 636. Sometime during the night, the guest broke into the victim's

bedroom and raped her. *Id*. The *Thomson* court considered whether the defendant

satisfied the first degree rape statute by feloniously entering a building. *Id*. at 637. There,

the State argued that the phrase "'*a building consisting of two or more units separately*

*secured or occupied*'" meant "any building in which at least one room happens to be

separately locked or occupied at the time of a crime." *Id.* at 642. In contrast, the

defendant argued that the phrase meant "a building occupied or intended to be occupied

by different tenants separately, for example, a hotel, apartment house, or rooming house."

*Id.* The *Thomson* court, without employing a plain meaning analysis, concluded that the

phrase was ambiguous and examined the history of the statute.[1] *Id.* at 643-44.

---

[1] *Thomson* quotes the drafter's commentary that states, "'multi-unit buildings is consistent with a similar provision in the definition of "dwelling house" . . . see also, *State v. Rio*, 38 Wn.2d 446, 450, 230 P.2d 308, *cert. denied*, 342[ ] U.S. 867 [230 P.2d 308] (1951)." *Thomson*, 71 Wn. App. at 644 (some emphasis omitted).

    In *Rio*, the Washington Supreme Court upheld a burglary conviction where the defendant, a worker who resided in his employer's house, entered the bedroom of his employer and committed a felony against his employer's wife. 38 Wn.2d at 450-51. *Thomson*, contrary to *Rio*, holds that a burglary does not occur when a houseguest breaks into his host's bedroom and commits a felony against his host. *Thomson*, 71 Wn. App. at 646. But because we need not explicitly overrule *Thomson* to decide this case, the observations noted above are dicta.

We disagree that the italicized phrase is ambiguous. The plain meaning of the phrase lends itself to only one interpretation. The phrase unambiguously means any multi-unit building in which the units are separately secured or occupied. There is no requirement, as suggested by the State in *Thomson*, that the unit be secured or occupied *at the time of the crime*. Nor, as suggested by the defendant in *Thomson*, is there any word in the phrase that limits its meaning to multi-unit buildings *with tenants*. If the legislature intended such meanings it could have said so. It did not. Because the phrase is unambiguous, resort to legislative history would be error. *Evans*, 177 Wn.2d at 192-93.

We conclude that a jail is a building that consists of two or more units separately secured or occupied. Accordingly, by application of RCW 9A.04.110(5), each unit or cell is a separate building.[2]

### 2. *No implied license for unlawful entry*

Dunleavy contends he did not commit burglary when he entered LaMunyon's cell because his entry was lawful from an implied license to enter the cell.

"A person 'enters or remains unlawfully' in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain." Former

---

[2] Dunleavy notes that *Thomson* placed great emphasis on the privacy interests of the occupants in its analysis. Because our analysis rests on the plain language of the statutory definition, we view the privacy interests of the occupants as irrelevant.

RCW 9A.52.010(5) (2011).  Dunleavy argues the evidence established that inmates go in and out of each other's cells frequently and this custom or practice supported his reasonable belief that he had an implied license to enter other inmates' cells.  *See State v. C.B.*, 195 Wn. App. 528, 538-39, 380 P.3d 626 (2016); *Singleton v. Jackson*, 85 Wn. App. 835, 839, 935 P.2d 644 (1997).

His argument is contrary to the standard that limits our review of factual issues. LaMunyon testified he did not give Dunleavy permission to enter his cell.  Sergeant Robertson testified that inmates are told when they are first booked into jail that they may not enter another inmate's jail cell.  Inmates are subject to punishment for breaking these rules, including criminal charges.  Dunleavy did elicit testimony that inmates often go into the cells of other inmates.  But the standard that limits our review contemplates conflicting evidence and requires us to resolve such conflicts in favor of the State.  *Pirtle*, 127 Wn.2d at 643.  A rational jury could find beyond a reasonable doubt that Dunleavy entered LaMunyon's cell unlawfully.

OFFENDER SCORE CALCULATION

Dunleavy contends the State did not meet its burden in proving his prior convictions to calculate his offender score at sentencing.  The State argues in response

12

that it did not need to provide evidence of his prior convictions because he waived this challenge by affirmatively acknowledging his convictions. We agree with Dunleavy.

Sentencing errors resulting in unlawful sentences may be raised for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008). Offender score calculations are reviewed de novo. *State v. Moeurn*, 170 Wn.2d 169, 172, 240 P.3d 1158 (2010).

The State has the burden of establishing a defendant's prior criminal history by a preponderance of the evidence to determine his or her offender score at sentencing. *State v. Ford*, 137 Wn.2d 472, 479-80, 973 P.2d 452 (1999). An unsupported statement of prior criminal history is insufficient to satisfy the State's burden of proof. *State v. Hunley*, 175 Wn.2d 901, 910, 287 P.3d 584 (2012). The State is relieved of this burden if the defendant affirmatively acknowledges his or her prior criminal history; the defendant's mere failure to object is insufficient. *Id*. at 912.

The State argues Dunleavy has waived this argument because he is not claiming his offender score was incorrectly calculated but instead just that the State did not meet its burden of proof. The State relies on *In re Personal Restraint of Goodwin*, 146 Wn.2d 861, 50 P.3d 618 (2002). The *Goodwin* court discussed various ways defendants can

waive a claimed error in offender score calculations, including acknowledging facts, even erroneous facts, underlying an offender score calculation.

Dunleavy's statements at sentencing do not constitute an acknowledgement of facts. The State points to Dunleavy's letter to the trial court. In that letter, Dunleavy asked the trial court to impose a drug offender sentencing alternative, and mentioned "the prosecutor's recommendation" of three to five years. RP at 191. Dunleavy's mention of the prosecutor's recommendation does not constitute an admission of facts.

The State also points to Dunleavy's statement to the trial court during sentencing. The trial court questioned Dunleavy about his ability to pay legal financial obligations. In response, Dunleavy stated that he was paying legal financial obligations on "[a]t least six" prior offenses. RP at 201. Although this statement is an admission of prior offenses, it is not an admission of sufficient facts to establish an offender score of 9+.

The State complains that Dunleavy's challenge to his offender score is a waste of resources. This might be true. But the State can safeguard unnecessary challenges by obtaining the defendant's stipulation to an offender score, by obtaining a clear acknowledgement by the defendant of his offender score, or by presenting proof of the

14

No. 34762-1-III
*State v. Dunleavy*

defendant's prior convictions. We remand so that the State can pursue one of these three options.[3]

Affirmed in part; remanded for resentencing.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Korsmo, J.

Pennell, J.

---

[3] Dunleavy requests that we deny the State an award of appellate costs in the event the State substantially prevails. We deem the State the substantially prevailing party. If the State seeks appellate costs, we defer the award of appellate costs to our commissioner in accordance with RAP 14.2.

15