[No. 52388-1-I.   Division One.   April 25, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. JOEL DAN ALLEN, *Appellant*.

126

*Dana M. Nelson* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Erin H. Becker, Deputy*, for respondent.

¶1 ELLINGTON, A.C.J. — Joel Allen walked into three Seattle buildings that were partially open to the public, intruded into private areas, and took items belonging to employees. A jury found Allen guilty of burglary, theft, and possession of stolen property. On appeal, Allen contends, among other things, that his right to a unanimous jury was violated because the State did not present sufficient evidence to establish both the "entered unlawfully" and "remained unlawfully" means of committing burglary.

¶2 Under certain circumstances, the distinction between entering and remaining unlawfully may be critical. In common factual situations, however, a jury instruction requiring the State to prove the defendant entered *or* remained unlawfully in a building raises no unanimity concerns, even if there is no evidence to support one of the alternative means. To the extent that our opinion in *State v. Klimes*[1] is inconsistent with this proposition, we disapprove it. In this case, the distinction would not have raised unanimity concerns. But because the deputy prosecutor mischaracterized long-established Washington law governing burglary during closing argument, we cannot be confident the jury was unanimous. We therefore reverse Allen's convictions for three counts of burglary.

## FACTS

¶3 Joel Allen was charged with three counts of second degree burglary, one count of second degree robbery, one count of second degree theft, and one count of second degree possession of stolen property. The charges arose from unrelated incidents at three downtown Seattle locations: the Airborne Express building at 3101 Western Avenue; the

[1] 117 Wn. App. 758, 73 P.3d 416 (2003).

U.S. Bank branch at 1420 Fifth Avenue; and the Sorenson and Edwards Law Firm at 1201 Third Avenue.

¶4 *Airborne Express.* On the afternoon of October 16, 2000, Gretchen Bryant returned to her cubicle on the fourth floor of the Airborne Express building on Western Avenue and encountered a man, later identified as Allen, carrying her wallet. Upon seeing Bryant, Allen dropped the wallet and attempted to flee. Two of Bryant's co-workers caught Allen in a stairwell and held him until the police arrived. Allen was not wearing a visitor's badge.

¶5 Airborne Express occupies all eight floors of the building. The main entrance is located on the first floor and is unlocked during business hours. Just past the entrance are two opposing elevator banks; a sign next to each set of elevators directs visitors to check in with the receptionist for a visitor's identification badge. The reception area is located just beyond the elevators, behind glass doors. The elevators and an adjacent stairwell are not secured. According to Airborne Express policy, visitors are supposed to obtain a visitor's badge and employees are supposed to escort visitors to the private areas of the building.

¶6 *U.S. Bank.* On May 15, 2001, Sean Cummings was the assistant manager of the U.S. Bank branch located on the first floor of the City Center Building at the corner of Fifth and Pike in Seattle. Cummings was standing at the top of a stairway when he noticed a man, later identified as Allen, walk out of his office. Cummings approached Allen and asked him what he was doing in the office. Allen replied that he was looking for a cash machine. Cummings then pointed out the nearest ATM, which was located just outside one of the entrances. Concerned, Cummings returned to his office and discovered that his wallet was missing from his coat pocket. Cummings immediately went outside after Allen, but could not find him.

¶7 A short time later, while seated in his office, Cummings saw Allen walk by across the street and ran outside. As Cummings approached, Allen looked surprised

and said, "I don't have it."[2] At this point, Cummings noticed that Allen was holding some credit cards in his hand and saw his photo on the card on top. Cummings then began struggling with Allen, who threw the cards down on the ground. Cummings, joined by a co-worker, held Allen on the ground until police arrived. Cummings recovered his credit cards from the sidewalk. Police also recovered additional credit cards and licenses that belonged to other people.

¶8 *Sorenson and Edwards.* On the morning of January 14, 2002, attorney Bruce Edwards was working in his office in the Washington Mutual Tower. Edwards' firm, Sorenson and Edwards, rented office space from the Karr, Tuttle, Campbell law firm in the northwest corner of the 28th floor.

¶9 At about 10:30 A.M., Edwards left his office to deliver a check to the Karr Tuttle accounting office. In order to do this, he walked down a short hallway from his office and then turned into one of the main corridors on the floor. On the way, Edwards saw a man, later identified as Allen, waiting by the elevator. Edwards, who was familiar with his own clients and many of the Karr Tuttle clients, did not recognize the man. Edwards continued on to the accounting office, dropped off the check, and walked back toward his office.

¶10 As he returned, Edwards again encountered Allen, who was leaving the hallway to Edwards' office. Allen said, "I get so lost in here; where are the elevators again?"[3] In response, Edwards pointed out the way and returned to his office, where he discovered that his wallet was missing from his coat pocket. Edwards ran to the elevator, but could not find Allen. Later that day, Allen used one of Edwards' credit cards to buy a platinum chain at a store in Bellevue.

¶11 Karr Tuttle occupied floors 27 through 29 of the building. The 27th and 28th floors are secured and can be reached directly by elevator only with a key card. The building's stairwell doors are also locked. In order to reach

---

[2] Report of Proceedings (RP) (Nov. 18, 2002) at 144.

[3] RP (Nov. 19, 2002) at 137.

these floors, visitors must take the elevator to the Karr Tuttle reception area on the 29th floor and check in with the receptionist. The receptionist then contacts the appropriate person to permit further access to the office. Just past the reception desk is an internal stairway to the 28th floor.

¶12 The jury acquitted Allen of the robbery charge, but found him guilty as charged on the remaining counts. At sentencing, the court determined that Allen's criminal history, which included 17 prior felonies, resulted in an offender score of 27 for the burglaries and 21 on the theft and possession of stolen property counts. Concluding that the multiple offense policy resulted in a presumptive sentence that was clearly too lenient, the court imposed an exceptional sentence of consecutive 68-month terms on two burglary counts, with the remaining terms to be served concurrently, for a total term of confinement of 136 months. Allen's primary contention on appeal is that he was denied his constitutional right to jury unanimity on all three burglary counts.

## DECISION

¶13 In some circumstances, the constitutional right to jury unanimity includes unanimity as to the means of committing the charged offense.[4] If the evidence is sufficient to support each alternative means submitted to the jury, "a particularized expression of unanimity as to the means by which the defendant committed the crime is unnecessary."[5] But if one or more of the alternative means is not supported by substantial evidence, the conviction must be reversed unless this court "can determine that the verdict was based on only one of the alternative means and that substantial evidence supported that alternative means."[6]

---

[4] *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994).

[5] *Id.* at 707-08.

[6] *State v. Rivas*, 97 Wn. App. 349, 351-52, 984 P.2d 432 (1999).

¶14 A person commits second degree burglary if, "with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building."[7] A person enters or remains unlawfully in premises when he or she "is not then licensed, invited, or otherwise privileged to so enter or remain."[8] With respect to buildings that are partly open to the public, "[a] license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public."[9] In *Klimes*, this court surveyed prior Washington law, noted that "enters unlawfully" and "remains unlawfully" describe separate acts, and concluded they are alternative means of committing burglary.[10]

¶15 Klimes was arrested in a junkyard while dismantling an engine. At trial, Klimes maintained that he had entered through the front gate. The State's primary theory was that he had entered unlawfully by climbing over the fence. During closing argument, however, the deputy prosecutor informed the jury that a lawful entry was rendered unlawful by the intent to commit a crime.[11] This is incorrect, and has been repeatedly rejected under Washington law.

¶16 Noting that, under the deputy prosecutor's theory, "every shoplifting inside a building would be elevated from a misdemeanor to a class B felony, a result that would far exceed the intent of our legislature,"[12] we reversed and remanded for a new trial. Although there was sufficient evidence to support the unlawful entry alternative, there was no evidence to support the unlawful remaining alternative, and the possibility of lack of jury unanimity was

[7] RCW 9A.52.030(1).

[8] RCW 9A.52.010(3).

[9] *Id.*

[10] *Klimes*, 117 Wn. App. at 767-68.

[11] *Id.* at 763-64.

[12] *Id.* at 767.

increased because of the deputy prosecutor's erroneous characterization of the law.[13]

■■ ¶17 Allen insists that the two alternative means are repugnant and that election by the prosecutor or a special instruction is required. He relies on our opinion in *Klimes*, which asserted, without elaboration, that the enters unlawfully and remains unlawfully means "are repugnant to one another."[14] This was an overstatement, from which we now retreat. Alternative means of committing a crime " 'are not repugnant to each other unless the proof of one will disprove the other.' "[15] Allen offers no argument suggesting that proof of one means of committing burglary disproves the other, and the concept of repugnancy is of little assistance to understanding the interplay between means of committing burglary.

¶18 In *Klimes*, we relied primarily upon two cases, *State v. Collins*[16] and *State v. Thomson*.[17] Collins was invited into a home and then assaulted the two occupants. He was charged with burglary. Because his initial entry was lawful, the *Collins* court noted that the unlawful entry alternative was not an issue and concluded that, for purposes of the burglary statute, Collins unlawfully remained on the premises when he exceeded the implied limitation on the scope and time of his invitation. *Collins* did not address the issue of jury unanimity.

¶19 In *Thomson*, the defendant was invited to spend the night in a guest room, but then broke into the victim's locked bedroom and assaulted her. He was charged with first degree rape, which required proof of felonious (unlawful) entry into a building. In concluding the defendant had not feloniously entered a building when he broke into the

---

[13] *Id.* at 770-71.

[14] *Id.* at 760.

[15] *State v. Arndt*, 87 Wn.2d 374, 38?3 553 P.2d 1328 (1976) (quoting *State v. Pettit*, 74 Wash. 510, 518-19, 133 P. 10?? (1913)).

[16] 110 Wn.2d 253, 751 P.2d 837 (198?

[17] 71 Wn. App. 634, 861 P.2d 492 (19?? ).

bedroom, the court delineated the difference between unlawful entry and unlawful remaining:

> [F]elonious entry occurs when a person initially enters a building without invitation, license or privilege, and with intent to commit a crime therein. . . . [F]elonious remaining occurs when (1) a person has lawfully entered a building pursuant to invitation, license or privilege; (2) the invitation, license or privilege is expressly or impliedly limited; (3) the person's conduct violates such limits; and (4) the person's conduct is accompanied by intent to commit a crime in the building.[18]

¶20 Both *Collins* and *Thomson* applied the unlawful remaining alternative in circumstances where the defendant's initial entry into a building was lawful. As these cases illustrate, the unlawful remaining concept is intended primarily for situations in which the initial entry to a building is lawful, but the defendant either exceeds the scope of the license or privilege to enter, or the license is impliedly or expressly terminated.

¶21 But neither *Collins* nor *Thomson* suggests that unlawful remaining, for purposes of burglary, occurs *only* when the initial entry is lawful. For example, in the common situation where a stranger breaks into a building, the entry is not then licensed, invited, or otherwise privileged and is therefore clearly unlawful. Having entered in this manner, the defendant cannot be said to have any license or privilege to be in the building at all. Consequently, the defendant's continuing presence in the building satisfies the statutory definition of unlawful remaining. Regardless of whether the defendant possessed an intent to commit a crime at the time of the unlawful entry, if the defendant unlawfully remains with the intent to commit a crime, we see no reason such conduct does not satisfy the requirements for burglary.

¶22 Courts in other jurisdictions have disagreed as to the precise meaning of the unlawful remaining element of

---

[18] *Thomson*, 71 Wn. App. at 640-41.

burglary. Some courts construe unlawful remaining narrowly and conclude it is restricted to situations in which there is a lawful entry.[19] Either by statute or judicial construction, some jurisdictions further limit the remaining element to situations in which the defendant "surreptitiously" remains following a lawful entry.[20]

¶23 Other courts reject such a narrow approach. In *State v. Rudolph*,[21] the court considered the unlawful remaining means in the context of a burglary statute similar to Washington's. Rudolph broke into the victim's home and then raped her. He was convicted of aggravated burglary. On appeal, he contended that the trial court erred by defining burglary as "entering or remaining unlawfully in a dwelling . . . with the intent to commit a felony" because this permitted the jury to find him guilty of burglary if he formed the intent to commit a sexual assault at the time of entry or at any time thereafter while he remained unlawfully.[22] He also claimed that remaining unlawfully applies only when the initial entry was lawful and that the evidence was undisputed that his entry was unlawful.[23]

¶24 The court rejected both arguments, noting that they found no support in the language of the statute, and observed that Rudolph's construction would lead to anomalous results:

---

[19] *See, e.g., Cooper v. People*, 973 P.2d 1234 (Colo. 1999) (rejecting suggestion that a person automatically remains unlawfully after unlawfully entering premises of another; burglary requires proof that defendant intended to commit crime inside building at the moment of the initial trespass).

[20] *See, e.g, Delgado v. State*, 776 So. 2d 233 (Fla. 2000) (limiting remaining in element of burglary to situations in which the remaining was surreptitious; concluding that burglary was not intended to cover the situation where an invited guest turns criminal or violent); *Arabie v. State*, 699 P.2d 890 (Alaska Ct. App. 1985); *see also* MODEL PENAL CODE § 221.1 (Official Draft and Revised Comments 1980); 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 8.13 (1986) ("best to limit the remaining-in alternative to where that conduct is done surreptitiously").

[21] 970 P.2d 1221 (Utah 1998).

[22] *Id.* at 1227.

[23] *Id.* at 1228.

Rudolph nevertheless argues that our interpretation of the "remaining unlawfully" provision is incorrect because it was included in our burglary statute for the purpose of reaching those cases where the actor initially enters a building lawfully but then remains there after his or her right to do so has expired for purposes of committing a crime. While this may be true, it does not necessarily follow that the "remaining unlawfully" provision is confined to those situations where the initial entry was lawful. We believe that such an interpretation would create an anomalous result. For instance, under Rudolph's interpretation of the statute, one who enters lawfully but then remains unlawfully and forms the intent to commit another felony, theft, or assault is guilty of burglary while one who enters unlawfully and thereafter forms that same intent is guilty only of trespass. We are unable to see the distinction between the two scenarios. In our view, the actor in the second scenario is at least as dangerous and culpable as the actor in the first. Therefore, we are not satisfied that our legislature intended such a result when it enacted our current burglary statute.[24]

We agree with the analysis in *Rudolph*.

¶25 Moreover, even if the unlawful remaining means is confined to situations where an initial entry is lawful, and the jury is instructed that the State must prove unlawful entry *or* remaining, there will generally be no prejudice to the defendant's right to a unanimous jury where the evidence establishes only an unlawful entry because no rational juror could rely on the unlawful remaining means without necessarily also finding that the entry was unlawful. In such circumstances, the court can be certain that the verdict was unanimous.

¶26 The facts in this case involve another common situation: where the defendant's initial entry into a building is clearly lawful, and the defendant exceeds the scope of any implied or express privilege by intruding into areas of the building not open to the public. This case is therefore similar to the circumstances in both *Collins* and *Thomson*. Again, a jury instruction requiring the State to prove

---

[24] *Id.* at 1229.

unlawful entry *or* remaining raises no unanimity concerns where there is no evidence of unlawful entry, and the lawfulness of the entry is not otherwise disputed because no rational juror could rely on the unlawful entry means to establish burglary.

■■ ¶27 But the foregoing approach does not consider the deputy prosecutor's rebuttal closing argument in this case. During closing argument, the deputy prosecutor conceded that all three buildings Allen entered were open to the public. He then explained the basis for the burglary charges as follows:

> Significant, because once again as in all three cases, buildings open to the public, or how else would Mr. Allen get in to steal? And it's important, and the law helps us determine, well, how do you burglarize a building that's open to the public?
>
> And the law covers that. They tell you. A privilege, a right to enter a building, a lobby, or to remain in a building only partially open to the public is not a privilege to enter or remain in that part of the building not open to the public.
>
> So in each of the burglary cases, that's exactly what we have. Mr. Allen chose these places, and he chose them because he had public access to get in. But in all cases he went beyond public access lobbies, reception areas, into private offices to steal. So he's guilty of burglary in this case.[25]

¶28 In response, defense counsel argued that the prosecutor had erroneously asserted that Allen was guilty of burglary because he had entered buildings open to the public with the intent to steal. Defense counsel maintained that under the State's definition, anyone who walked into a store and shoplifted would be guilty of burglary.

¶29 In rebuttal, the deputy prosecutor agreed with this characterization of the State's argument:

> [*Defense counsel*] *has said that if this is a burglary, every thief who steals from Safeway has committed a burglary. Well, he's right.* If you look at the definition of burglary, he's correct. And the fact that we as laymen call that shoplift, or we in our

---

[25] RP (Nov. 21, 2002) at 46.

society may just charge theft instead of burglary for everybody who steals a candy bar from Safeway, doesn't mean that in the state of Washington that those shoplifters in Safeway aren't technically committing a burglary.

And the reverse is also true. There is no serious suggestion, and there's no definition of shoplift here. *If the Defendant is in those buildings with the intent to steal, as counsel concedes, he's guilty of burglary by the law.*[26]

¶30 Essentially, the deputy prosecutor urged the jury to convict Allen of burglary if it found that he had *entered* each building with the intent to steal. This argument is inconsistent with long-standing Washington law.[27] A lawful entry, even one accompanied by nefarious intent, is not by itself a burglary. Unlawful presence and criminal intent must coincide for a burglary to occur.

¶31 The deputy prosecutor's argument invited the jury to find Allen guilty without even considering whether he strayed into private areas. Under the circumstances, we cannot be certain that the jury relied solely on the unlawful remaining alternative. Allen's burglary convictions must therefore be reversed and the matter remanded for a new trial.

■ ¶32 We take this opportunity to address certain issues that may arise on remand. Contrary to Allen's arguments, there was sufficient evidence to support the burglary convictions on the basis of the unlawful remaining alternative. All three buildings were open to the public, and Allen was therefore privileged to enter. In each, however, the evidence suggested Allen exceeded that privilege and unlawfully remained. In the Airborne Express and Washington Mutual buildings, the privilege was limited by the requirement that visitors check in with a receptionist to obtain authorization for areas that were not open to the public. At Airborne Express, this limitation was signaled by

---

[26] *Id.* at 89-90 (emphasis added).

[27] *See State v. Miller*, 90 Wn. App. 720, 725, 954 P.2d 925 (1998) ("Washington law does not provide that entry or remaining in a business open to the public is rendered unlawful by the defendant's intent to commit a crime.").

signs next to the elevators, just inside the public entrance. At the Washington Mutual Tower, visitors to Karr Tuttle and Sorenson and Edwards were physically restricted by the elevator to entering on the 29th floor, next to the receptionist's station. In both cases, the evidence indicated that Allen circumvented these requirements and intruded into areas not open to the public.

¶33 Similarly, the evidence indicated that Cummings' office in the U.S. Bank branch was physically separated from the lobby and teller areas by a partial wall and a portion of the escalator. In addition, Cummings testified he placed some chairs to leave only a narrow opening into the office, supporting a reasonable inference that the space was not part of the public area of the bank and that Allen exceeded the scope of any privilege by entering the office.

¶34 Viewed in the light most favorable to the State, the evidence was sufficient to support the unlawful remaining means as to all three burglary counts.[28]

¶35 Allen also contends the sentencing court erred in entering an exceptional sentence in violation of *Blakely v. Washington*.[29] Under *State v. Hughes*,[30] Allen is correct.

¶36 Reversed and remanded.

KENNEDY and APPELWICK, JJ., concur.

---

[28] *See State v. Crist*, 80 Wn. App. 511, 909 P.2d 1341 (1996) (juvenile's entry into father's locked bedroom constituted unlawful remaining for purposes of burglary).

[29] 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[30] 154 Wn.2d 118, 110 P.3d 192 (2005).