IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39096-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARTURO JEROME CHAMPINE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Arturo Champine was convicted by a jury of second degree burglary after he entered the lobby of a hotel, reached over the front desk, and took an employee's cell phone. On appeal, Mr. Champine asserts the prosecutor committed misconduct during summation by improperly arguing that his license to remain in the hotel was implicitly revoked when he took the employee's cell phone. Mr. Champine further claims his trial attorney was ineffective for failing to object to the prosecutor's misstatement of the law. Lastly, Mr. Champine challenges the court's imposition of the $500 victim penalty assessment (VPA).

Mr. Champine has failed to demonstrate that the prosecutor's mischaracterization of the law ascended to the level of misconduct that was so flagrant and ill intentioned that an instruction could not have cured any resulting prejudice. He has also failed to establish the result of the trial would have been different had his attorney timely objected

No. 39096-9-III
*State v. Champine*

the prosecutor's mischaracterization of the law.  Therefore, we affirm his conviction and

remand for the trial court to strike the VPA from the judgment and sentence.

BACKGROUND

The facts underlying Mr. Champine's conviction are undisputed.  On November

17, 2021, Mr. Champine entered the lobby of the Hotel Ruby.  The hotel employee

assigned to the front desk had temporarily left the area to assist a bartender in the back of

the office, leaving her cell phone at the front desk.  The front desk is a raised counter that

separates the lobby area from the receptionist desk.  The area can be closed off by a

curtain located to the right of the receptionist desk.  In the employee's absence,

surveillance video captured Mr. Champine reach over the front desk, grab her cell phone,

place it in his pocket, and exit the lobby.



The employee reviewed video from the surveillance camera and discovered her

phone had been purloined.  The employee then called the police and reported her phone

2

stolen.  Mr. Champine was arrested a little over a week later for second degree burglary

after police recognized him from the surveillance video.

Prior to trial, Mr. Champine filed a *Knapstad*[1] motion to dismiss the burglary

charge, arguing that the allegations failed to establish a prima facie case that he entered or

remained unlawfully in a building.  The court denied the motion.[2]  The case later

proceeded to trial.  At the conclusion of the State's case, Mr. Champine moved to dismiss

the charge, arguing that no reasonable jury could find beyond a reasonable doubt all the

elements of the crime.  Specifically, Mr. Champine argued that he was in a public place,

therefore not unlawfully on the premises.  The court denied the motion and defense

counsel rested without producing additional evidence.

The court then instructed the jury.  Relevant to this appeal are the following

instructions:

> The lawyers' remarks, statements, and arguments are intended
> to help you understand the evidence and apply the law.  It is important,
> however, for you to remember that the lawyers' statements are not
> evidence.  The evidence is the testimony and the exhibits.  The law is
> contained in my instructions to you.  You must disregard any remark,

---

[1] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

[2] The *Knapstad* procedure is akin to a summary judgment motion in civil cases.  In
both instances, the court refrains from passing judgment on the facts.  *Knapstad*, 107
Wn.2d at 355-56.  In its order denying Mr. Champine's *Knapstad* motion, the trial court
limited the impact of its ruling: "The Court's findings and conclusions of law contained
herein are solely for the purpose of ruling on the Defendant's Motion to Dismiss Pursuant
to *State v. Knapstad*."  Clerk's Papers (CP) at 16 (emphasis omitted).

statement, or argument that is not supported by the evidence or the law in my instructions.

Clerk's Papers (CP) (Jury Instruction (JI) 1) at 48;

> To convict the defendant of the crime of burglary in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> > (1) That on or about November 17, 2021, the defendant entered or remained unlawfully in a building;
> >
> > (2) That the entering or remaining was with intent to commit a crime against a person or property therein; and
> >
> > (3) That this act occurred in the State of Washington.
>
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP (JI 8) at 56;

> A person enters or remains unlawfully in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain.
>
> A license or privilege to enter or remain in a building that is only partly open to the public is not a license or privilege to enter or remain in that part of the building that is not open to the public.

CP (JI 9) at 57; and

> The term enter includes the entrance of the person, or the insertion of any part of the person's body, or any instrument or weapon held in the person's hand and used or intended to threaten or intimidate another person, or to detach or remove property.

CP (JI 10) at 58.

4

After the jury was instructed, the State presented its closing argument. Because this appeal concerns the prosecutor's alleged mischaracterization of the law during summation, a recitation of portions of his argument is warranted. The prosecutor began his closing argument by explaining that his statements were not the law.

> I want you to know, though, what I'm telling you right now is merely argument. I'm not the law, nor are my words. The instructions that you have each been provided and had read to [you] by the Judge, that's what you have to make your analysis on. Those instructions tell you what the law is.

Rep. of Proc. (RP) at 305.[3]

The prosecutor then proposed two means by which Mr. Champine may have committed second degree burglary: one by unlawfully remaining in the hotel and the second by unlawfully entering (reaching into) a restricted area within the lobby of the hotel.

With respect to the first means, the prosecutor argued:

> [I]t's when he committed that theft of [the employee]'s iPhone 13 Pro Max that that license was revoked, exceed[ing] the scope of his privilege to be there. This is the unlawful remaining aspect that you have to consider.
> . . . .
> From the moment of that revocation, Mr. Champine was unlawfully in the Hotel Ruby. He remained after having license to originally be there. That license was revoked. He remained unlawfully until he left.

RP at 308-09;

---

[3] The report of proceedings cited in this opinion are from proceedings dated February 10, 2022.

5

[A]fter that phone was taken, he unlawfully remained in the Hotel Ruby because his license to be in that building as a whole was revoked.

RP at 312; and

When he committed that theft, that license was revoked by implication. He remained unlawfully thereon.

RP at 324.

In advancing the unlawful entry means, the prosecutor argued:

As you're also instructed, it does not matter that Mr. Champine's arm—excuse me—it does not matter that only Mr. Champine's arm broke that plain dividing the countertop to the employee area as [sic] and enter, the definition of enter, again, includes the insertion of any part of Mr. Champine's body to remove property. Again, all of you have seen the surveillance.

RP at 309;

Now your duty is to determine whether or not Mr. Champine unlawfully entered the employees' side of the check-in counter at the Hotel Ruby to take [the employee]'s cell phone.
. . . .
. . . [Y]ou should be satisfied beyond a reasonable doubt that Mr. Champine unlawfully entered the employee side of the check-in counter to take [the employee]'s phone . . . .

RP at 305-06;

Mr. Champine exceeded the scope of his license by entering the employee side of that check-in counter to take the phone.

RP at 309; and

Because it's clear Mr. Champine both unlawfully entered that employee work station by sticking his arm across that countertop for the purpose of taking that phone while he was within the Hotel Ruby.

RP at 312.

The prosecutor concluded his argument by equally promoting both theories.

> Again, it is not Mr. Champine's burden, but remember your common sense, also. Why? Because it's clear Mr. Champine both unlawfully entered that employee work station by sticking his arm across that countertop for the purpose of taking that phone while he was within the Hotel Ruby. Additionally, after that phone was taken, he unlawfully remained in the Hotel Ruby because his license to be in that building as a whole was revoked.

RP at 311-12.

Defense counsel did not object to the State's arguments. Defense counsel then presented a closing argument to the jury. Defense counsel acknowledged that Mr. Champine had taken the employee's cell phone, thereby committing theft.

> There is no[ ] conflicting evidence at trial. The evidence is consistent. Mr. Champine is seen on a video camera entering a public hotel lobby. Mr. Champine enters and goes to the counter and waits and looks, waits and looks, and takes a phone from across the counter and immediately departs.

RP at 313; and

> Defense's position is, it's a theft. If a reasonable person can't understand these boundaries, if a reasonable person doesn't know when they're in that situation, it's a theft.

RP at 320.

In response to the State's argument, defense counsel accurately applied the law to the evidence.

> The defense is arguing this is a transactional zone. How would one know that is an employee work space only area if it's not clearly labeled employee work space area?

7

The other argument that the State is effectively trying to articulate is what is called the invisible plain argument, which is where does this area start and stop where the hand crosses over to know you've gone from one area to the other. If you were—if a person were to be in a hotel and there's a door that says "employee only area," and they open that door and stick their hand through it, well, in that situation there's a clearly identified area. In the area where somebody is standing at the public hotel counter lobby, how is a reasonable person to know where this invisible plain is that they can or can't move their hand across? The entire time Mr. Champine stood in the public area of the hotel lobby.

RP at 319. Defense counsel then concluded his argument, reaffirming to the jury the importance of the court's instructions on the law.

Discuss the evidence, discuss the elements and ask questions. Please be rigorous and scrutinize the language of the jury instructions and challenge these definitions. Do not overlook any key aspects of the jury instructions or critical evidence that was presented at trial.

RP at 322.

During deliberations, the jury asked the court, "Is remaining in [a] space after committing a crime considered, by law, remaining unlawfully or any extended definition of 'remaining unlawfully'[?]" CP at 64. After consulting with counsel, the judge responded that he was unable to provide further instructions and informed the jurors to reread the instructions. Following deliberations, the jury convicted Mr. Champine of second degree burglary, and this appeal followed.

ANALYSIS

On appeal, Mr. Champine claims the prosecutor mischaracterized the law in his summation to the jury, thereby depriving him of a fair trial. He contends the

8

mischaracterization of the law amounted to prosecutorial misconduct and his trial

attorney was ineffective for failing to object. The State maintains that the arguments

were an accurate statement of the law and that Mr. Champine has failed to show

prejudice.

We conclude the prosecutor mischaracterized the law when he argued Mr.

Champine's privilege to remain in the hotel lobby was implicitly revoked when he took

the employee's cell phone. However, the prosecutor's argument did not rise to the level

of misconduct that was so flagrant and ill intentioned that an instruction could not have

cured any resulting prejudice. We further conclude that Mr. Champine has failed to

establish that the result of the trial would have been different had his trial counsel timely

objected to the prosecutor's misstatement of the law.

PROSECUTOR'S MISCHARACTERIZATION OF THE LAW

We first address whether the prosecutor misstated the law during closing

argument.

A person commits the crime of second degree burglary when, with the intent to

either commit a crime against a person or property, "he or she enters or remains

unlawfully in a building other than a vehicle or a dwelling." RCW 9A.52.030(1). A

person "enters or remains unlawfully" when they are not licensed, invited, or otherwise

privileged to enter or remain. RCW 9A.52.010(2). If only part of the building is open to

9

the public, the license or privilege does not extend to those areas not open to the public.

RCW 9A.52.010(2).

Here, the alleged misconduct relates to the "remains unlawfully" element. "A

lawful entry, even one accompanied by nefarious intent, is not by itself a burglary." *State

v. Allen*, 127 Wn. App. 125, 137, 110 P.3d 849 (2005). Consequently, the lawful entry or

remaining in a business open to the public is not rendered unlawful solely by the

defendant's intent to commit a crime. *State v. Miller*, 90 Wn. App. 720, 725, 954 P.2d

925 (1998). Rather, the criminal intent must be accompanied by an unlawful presence for

a burglary to occur. *Allen*, 127 Wn. App. at 137. Accordingly, one may commit second

degree burglary when he or she lawfully enters a building but later exceeds the scope of

an implied or express privilege by intruding into areas that are not open to the public. *Id.*

at 135. It is for the trier of fact to infer limitations on the scope of a person's privilege to

be on the premises based on the particular facts of the case. *State v. Collins*, 110 Wn.2d

253, 261-62, 751 P.2d 837 (1988).

During summation, the prosecutor repeatedly argued that Mr. Champine's

privilege to remain in the lobby was implicitly revoked when the theft occurred. On

appeal, the State cites *Collins* to support its contention that committing a crime within a

building revokes the privilege to remain, and thus constitutes a burglary. In *Collins*, the

defendant was invited into a person's home for the purpose of using a telephone. 110

Wn.2d at 255. After using the telephone, Mr. Collins grabbed two individuals within the

home and pulled them into a bedroom where he raped one and assaulted the other. *Id.* Among other charges, Mr. Collins was charged with first degree burglary. *Id.*

On review, the Supreme Court held that from the facts in that case a jury could infer that Mr. Collins' license to enter was limited to a specific area of the home and for a single purpose. *Id.* at 261. The High Court held that a reasonable person would not construe the invitation to enter as a general invitation to access all areas of the house. *Id.* The court further held that where entry was granted for a limited purpose and the homeowner thereafter resists aggressive behavior by the invitee who demonstrated an ulterior motive, "a limitation on or revocation of the privilege to be on the premises may be inferred from the circumstances of the case." *Id.* The court explained that its holding on implicit revocation was limited, and should be applied on a case-by-case basis to avoid turning every indoor crime into a burglary. *Id.* at 261-62.

The holding in *Collins* does not apply to the circumstances of this case. Unlike a business that is open to the public, one has an enhanced expectation of privacy in their home. Thus, an invitation into one's home for a single reason, by its very nature, is highly restrictive. A minor incursion beyond the bounds of the invitation could implicitly revoke the invitation. Were we to adopt the State's argument, that commission of any crime in a building revokes the privilege to remain, a misdemeanor theft in a store might be charged as a burglary.

Here, to the extent the prosecutor argued that Mr. Champine unlawfully remained at the hotel by taking the phone, rather than by entering an area not open to the public, he mischaracterized the law.

PROSECUTORIAL MISCONDUCT

We next address Mr. Champine's contention that the prosecutor engaged in misconduct when he repeatedly mischaracterized the law to the jury.

Prosecutorial misconduct is grounds for reversal if "'the prosecuting attorney's conduct was improper and prejudicial.'" *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (quoting *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009)). The defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). A prosecutor's argument must be confined to the law stated in the trial court's instructions. *State v. Walker*, 164 Wn. App. 724, 736, 265 P.3d 191 (2011). When a prosecutor mischaracterizes the law and there is a substantial likelihood that the misstatement affected the jury verdict, the prosecutor's actions are considered improper. *Id.*

When examining a prosecutor's alleged misconduct, the improper conduct is not viewed in isolation. *Monday*, 171 Wn.2d at 675. Instead, the conduct is looked at "in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" *Id.* (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)). The

purpose of viewing the conduct in this light is to determine if the prosecutor's conduct was prejudicial to the defendant, and it will only be viewed as prejudicial when there is a substantial likelihood the misconduct affected the jury's verdict. *Id.* Therefore, when viewing misconduct, the court should not focus on what was said or done but rather on the effect that flowed from the misconduct. *Emery*, 174 Wn.2d at 762.

If a defendant fails to object at trial to the prosecutor's misconduct, then the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *Id.* at 760-61. "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id.* at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2012)).

Here, Mr. Champine fails to meet this heightened standard. Although, the prosecutor misstated the law, the misstatement must be viewed in the context of the entire argument, the evidence presented in the case, and the court's instructions to the jury. Additionally, Mr. Champine is unable to establish that no curative instruction would have obviated any prejudicial effect on the jury and that the improper argument resulted in prejudice.

As a preliminary matter, Mr. Champine does not assign error to the jury instructions. Jury instructions are proper when they do not mislead the jury and properly inform the jury of the applicable law. *State v. Hutchinson*, 135 Wn.2d 863, 885, 959 P.2d 1061 (1998), *abrogated on other grounds*, *State v. Jackson*, 195 Wn.2d 841, 467 P.3d 97 (2020). We presume that jurors follow instructions, and here, there is no evidence to the contrary. *Hizey v. Carpenter*, 119 Wn.2d 251, 269-70, 830 P.2d 646 (1992).

Mr. Champine is unable to demonstrate that the prosecutor's mischaracterization of the law resulted in prejudice that had a substantial likelihood of affecting the jury verdict. The prosecutor advanced two theories by which Mr. Champine may have committed burglary. One of the two theories comported with the jury instructions, the second did not.[4] The argument conforming to the jury instruction was clearly articulated by the prosecutor as evidenced by defense counsel choosing not to respond to the improper argument.

Moreover, defense counsel agreed that "Mr. Champine enters and goes to the counter and waits and looks, waits and looks, and takes a phone from across the counter

---

[4] Instruction 9 states in part, "A license or privilege to enter or remain in a building that is only partly open to the public is not a license or privilege to enter or remain in that part of the building that is not open to the public." CP at 57.

Instruction 10 states, "The term enter includes the entrance of the person, or the insertion of any part of the person's body, or any instrument or weapon held in the person's hand and used or intended to threaten or intimidate another person, or to detach or remove property." CP at 58.

and immediately departs." RP at 313. Mr. Champine's concession invited the jury to

apply the law from the instructions to the agreed facts. Specifically, the jury was tasked

with deciding whether Mr. Champine's brief intrusion into the employee area of the hotel

lobby constituted an unlawful entry. Viewing his concession in light of instruction 9 and

instruction 10, Mr. Champine is unable to show the prosecutor's mischaracterization of

the law resulted in prejudice that had a substantial likelihood of affecting the jury verdict.

The stipulated evidence supports the jury's verdict.

Mr. Champine fails to persuade us that the prosecutor's mischaracterization of the

law prejudicially affected him. This is because the court referred the jury back to its clear

instructions that explain the right to remain can be revoked by entering an area not open

to the public, and that entering can occur even if only a body part enters the area. We are

confident the jury based its decision on these clear instructions.

INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Champine argues that his trial attorney was constitutionally ineffective for

failing to object to the prosecutor's misstatement of law during summation. The State

argues that regardless of any deficiencies in representation, Mr. Champine is unable to

show prejudice.

Defendants have a constitutionally guaranteed right to effective assistance of

counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d

104, 115, 410 P.3d 1117 (2018). A claim of ineffective assistance of counsel is an issue

of constitutional magnitude that may be considered for the first time on appeal. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). Ineffective assistance of counsel claims are reviewed de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

A defendant bears the burden of showing (1) that his or her counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and, if so, (2) that there is a reasonable probability that but for counsel's poor performance, the outcome of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If either element is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

A defendant alleging ineffective assistance of counsel bears the burden of showing deficient representation. *McFarland*, 127 Wn.2d at 335. In reviewing the record, there is a strong presumption that counsel's performance was reasonable. *Id.* The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). When counsel's conduct can be characterized as a legitimate trial strategy or tactic, their performance is not deficient. *Kyllo*, 166 Wn.2d at 863.

Even if we find that counsel's performance was deficient, a defendant must affirmatively prove prejudice. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). This requires more than simply showing that "the errors had some conceivable

16

effect on the outcome." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant demonstrates prejudice by showing that the proceedings would have been different but for counsel's deficient representation. *McFarland*, 127 Wn.2d at 337.

Here, Mr. Champine has demonstrated that his trial attorney's failure to object to the prosecutor's improper arguments was not part of a legitimate trial strategy. Through his attorney, Mr. Champine stipulated to reaching over the front desk and taking the employee's cell phone. Consequently, the only debatable issue at trial was whether his actions were sufficient to support a conviction for burglary.

The jury viewed a security video that depicted Mr. Champine entering the lobby of the hotel, reaching over the front desk, grabbing the phone, and departing the hotel. Mr. Champine's trial counsel appositely recognized the narrow legal issue presented by the facts of the case. Both prior to trial and at the conclusion of the State's case at trial, defense counsel challenged the sufficiency of the State's evidence. Given the narrow issues presented by this case, there is no legitimate trial strategy for failing to object to the State's mischaracterization of the law that a theft implicitly rescinds one's privilege to remain in a business that is generally open to the public. Defense counsel's failure to object constitutes performance that falls below an objective standard of reasonableness.

However, Mr. Champine is unable to demonstrate he was prejudiced by his attorney's failure to object. Prejudice exists if there is a reasonable probability that, but

17

for counsel's errors, the result of the trial would have been different. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (citing *Strickland*, 466 U.S. at 688). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

During summation, the State advanced two theories of burglary, one of which misstated the law and was unsupported by the court's instructions to the jury. Mr. Champine's trial counsel conceded that a theft occurred, but argued that the front desk was a "transactional zone" that was not clearly marked or delineated as an employee-only area and thus the State had failed to prove that reaching into this area constituted a burglary. RP at 319. Although Mr. Champine's trial counsel did not address the State's theory of implicit revocation of his license to remain in the building, he urged the jurors to scrutinize the State's second theory.

> At a countertop where you return an item in Walmart, there's a variation in the countertop height. And there's a computer on the other side normally and a phone on the other side where the employees are at. If you take an item—if a person takes an item from the top part of the counter and leaves the store, they have stolen it. But if it's on the other side of the counter, according to the State, it's second degree burglary because you have breached the plain of an employee only area. That is what they're trying to argue.

RP at 321.

During deliberations, the jury submitted a question demonstrating they considered the State's misstatement of the law on implicit revocation to remain in the building. In

18

response, the court directed the jury back to the instructions. The instructions are an accurate statement of the law and support the State's contention that Mr. Champine committed burglary by unlawfully entering a restricted area reserved for employees and snatching an employee's cell phone from the restricted area.

Based on Mr. Champine's concession that he took the cell phone from the employee area and that the law was contained in the jury instructions, he has failed to demonstrate that, had trial counsel properly noted an objection to the State's mischaracterization of the law, there is a reasonable probability that the result of the trial would have been different. The jury instructions supported the narrow issue argued by the State and Mr. Champine's counsel that Mr. Champine's minimal entry into a restricted area reserved for employees to take the cell phone met the unlawful entry element of second degree burglary.

VICTIM PENALTY ASSESSMENT

Mr. Champine challenges the imposition of the $500 VPA as part of his sentence because he is indigent. Under former RCW 7.68.035(1)(a) (2018), trial courts were required to impose a $500 VPA on one convicted of a felony or gross misdemeanor. In 2023, the statute was amended. *See* LAWS OF 2023, ch. 449, § 1. Effective July 1, 2023, a trial court was no longer authorized to impose the VPA if it found a defendant indigent at the time of sentencing. *See* RCW 10.01.160(3). Recently, we held that the amendment applies to cases pending on direct appeal. *See State v. Ellis*, 27 Wn. App. 2d 1, 530 P.3d

No. 39096-9-III
*State v. Champine*

1048 (2023).  Because the sentencing court previously found Mr. Champine indigent and his case is currently pending direct review, the $500 VPA fee must be struck from the judgment and sentence.

We affirm Mr. Champine's conviction but remand for the trial court to strike the VPA from his judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

No. 39096-9-III

LAWRENCE-BERREY, A.C.J. (concurring) — I concur with the lead opinion, but write separately to emphasize why I disagree with our dissenting colleague. In my view, Arturo Champine fails to establish he was prejudiced either by the prosecutor's erroneous legal argument or by his trial counsel's failure to object to it.

The jurors' question to the court indicates two things. First, some jurors did not understand the law, likely because of the prosecutor's confusing closing argument. Second, some jurors did understand the law, likely because of the court's clear instructions and because of defense counsel's correct closing argument. Had all jurors misunderstood the law, they would not have asked the court to clarify it.

The court's written instructions and defense counsel's closing argument made plain that the question for the jury was whether Mr. Champine, by reaching across the barrier between where he stood and the front desk, entered an area not open to the public. This is the point that differentiates theft from burglary. The court, by redirecting the jurors to its clear written instructions, emphasized the preeminence of those instructions over the prosecutor's closing argument.

No. 39096-9-III
*State v. Champine* — concurring

Even if the question of prejudice is close—and I do not believe it is—Mr. Champine bears the burden of establishing prejudice on a more-likely-than-not basis. In this respect, he fails.

_____Lawrence-Berrey, A.C.J._____
Lawrence-Berrey, A.C.J.

No. 39096-9-III

STAAB, J. (dissenting) — The events in this case are undisputed. Arturo Champine reached across a raised counter in a hotel lobby and took a cell phone from the desk and walked out of the hotel. The legal consequences of that action were disputed. Defense counsel admitted the conduct constituted theft but argued that the State failed to prove the charge of burglary because it was not clear where the public space ended and the restricted space began. The State argued two theories of criminal liability. First, that Champine exceeded the scope of his license to enter when he reached into a restricted area and committed a crime. Second, the State argued that once Champine committed the crime of theft, his license to be anywhere in the hotel was implicitly revoked.

I agree with the majority that the second theory was legally inaccurate. I also agree with the majority that defense counsel's failure to object to the prosecutor's incorrect argument was deficient. However, unlike the majority, I would find that Champine has demonstrated prejudice from his attorney's failure to object.

Prejudice exists if there is a reasonable probability that, except for counsel's errors, the result of the trial would have been different. *State v. Grier*, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011). "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

The majority determines that defense counsel's deficient performance did not cause prejudice because the evidence was overwhelming. I disagree.

Whether Mr. Champine entered a restricted area by reaching his hand across a raised counter is debatable. The hotel manager testified that employees were trained that if they needed to leave the front desk, they should put a sign in the middle of the raised counter indicating that someone would be back shortly, but no sign was on the counter when Mr. Champine entered the empty lobby. He also testified that to the side of the desk was a curtain that could be closed off to restrict access to the desk, but was not closed on this occasion. The curtain did not contain signage indicating "employees only," and guests could use the nearby hallway to access restrooms or the hotel lounge. The manager also testified that certain doors near the lobby were marked with "employee only" signs.

The hotel clerk who was working that night also testified. She described the lobby as small. While she would generally put a sign on the counter if she left, she did not do so on this occasion. She described the raised desk and indicated that there would be no reason for a guest to reach over the counter onto the desk.

In closing, defense counsel pointed out that the raised counter was clearly public and there was nothing explicit to indicate that the desk behind the counter was restricted

2

to employees only. Instead, one would have to infer this restriction. Counsel provided an analogy of a guest reaching over and grabbing a cookie from the desk.

Finally, if the jury was not convinced that reaching across the counter constituted burglary then it should have entered a verdict of not guilty. Instead, the jury's question to the court indicates that it considered the State's incorrect argument that Champine's license to be in the hotel was implicitly revoked when he committed the theft.

Given the State's argument, the failure to respond to the jury's question, and defense counsel's concession that a theft had occurred, the jury was left with no option except a guilty verdict. Had defense counsel objected and thereby precluded the State from making the incorrect argument at trial, there is a reasonable probability that the outcome of the trial would have been different.

_____
Staab, J.